# United States Court of Appeals
## For the First Circuit

No. 15-1433

KATHLEEN D'AGOSTINO; DENISE BOIAN; JEAN M. DEMERS; LAURIE SMITH;
KELLY WINSHIP; DENISE FARLEY; STEPHANIE KOZLOWSKI-HECK; LESLIE
MARCYONIAK; ELIZABETH MONGEON,

Plaintiffs, Appellants,

v.

CHARLIE BAKER, in his official capacity as Governor of the
Commonwealth of Massachusetts; THOMAS L. WEBER, in his official
capacity as Director of the Department of Early Education and
Care; SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 509,

Defendants, Appellees.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

———————

Before

Lynch, Circuit Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

———————

William L. Messenger, with whom the National Right to Work
Legal Defense Foundation, Geoffrey R. Bok, and Stoneman, Chandler
& Miller were on brief, for appellants.
Timothy J. Casey, Assistant Attorney General, with whom Maura
Healey, Attorney General of Massachusetts, was on brief, for
appellees Charlie Baker and Thomas L. Weber.

———————

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

Scott A. Kronland, with whom Peder J.V. Thoreen, Altshuler Berzon LLP, Katherine D. Shea, and Pyle Rome Ehrenberg PC were on brief, for appellee Service Employees International Union, Local 509.

Sarah A. Smegal, with whom Hackett Feinberg P.C. was on brief, for the National Federation of Independent Business Small Business Legal Center, amicus curiae in support of plaintiffs-appellants.

---

February 5, 2016

---

SOUTER, **Associate Justice**.  As relevant here, Mass. Gen. Laws ch. 15D, § 17(b) provides that family child care providers "shall be considered public employees . . . solely for the purposes of . . . chapter 150E," the statute authorizing employees in public service to organize for collective bargaining.  The appellants are such providers (and one assistant to a provider), operating on a daily basis in their own houses and serving "low-income and other at-risk children," id. § 17(a), with custodial care and educational help.  They are hired by those legally responsible for the children at rates set by the Commonwealth, which underwrites the resulting charges.

A majority of the class of providers in question chose the appellee Service Employees International Union, Local 509, as their exclusive agent for bargaining collectively with the responsible state agency, the Department of Early Education and Care.  The subjects of their attention are customary in collective bargaining, and include recruitment and training of providers. Id. § 17(g).  The state Legislature nonetheless retains ultimate discretion over appropriations necessary to fund the government's subvention.  Id. ch. 150E, § 7(b).

No provider is required by statute or by the current agreement between the Department and the Union to become a union member or to contribute any money to the Union for any purpose. While a provider may not bargain separately or furnish services

under terms different from those set by the collective bargaining agreement, a provider is free to address the Department, the Legislature and the public with any expression of disagreement with a union position, or on the broader policy or philosophy governing family child care services, or on any other subject. And a provider may raise a grievance directly with the Department, although the Union has a right to be represented at any ensuing meeting, and the Department may take no responsive action at odds with an existing agreement.

The appellants declined to join the Union and brought this action in the district court under 42 U.S.C. § 1983 challenging the statutory scheme that authorizes the selection of an exclusive bargaining agent to agree on terms that affect their relationships with their clients and the government. Their facial challenge to the statutory regime claims violation of their rights of freedom of association and other expressive rights guaranteed by the First Amendment. The district court dismissed their complaint under Federal Rule of Civil Procedure 12(b)(6), and we affirm.

Our disposition of the constitutional claims turns on precedent, and the appellants' principal arguments probe the vitality of that precedent in light of recent developments. The convenient starting point for purposes of this case is Abood v. Detroit Board of Education, 431 U.S. 209 (1977), dealing with the

rights of teachers employed in public education to be free from enforced association with a union.  The Court affirmed the centrality of exclusive and fair representation to effective collective bargaining, id. at 220-21, and followed law previously applied in private sector litigation: it permitted an agency shop agreement requiring non-union members of a bargaining unit to contribute a fee in lieu of dues to support the bargaining activity of an exclusive union-bargaining representative selected by a majority of bargaining unit employees, id. at 225-26.  The permissible contribution was held to be justified by the overarching object of promoting labor peace, and by the equity of preventing free riders, an analysis taken to suffice as to dissenting public employees as well as to their private counterparts.  Id. at 224.  Specifically, the Court held that the inherently political character of labor agreements and their implementation in governmental employment was of no constitutional consequence that could distinguish the claims of public and private employees.  Id. at 232.  For that matter, the public-private distinction was likewise irrelevant under the general rule holding it unconstitutional to charge non-union employees a fee to support an exclusive bargaining representative's political activity in the conventional sense.  See id. at 235-37.

Abood's understanding that non-union public employees have no cognizable associational rights objection to a union

exclusive bargaining agent's agency shop agreement points emphatically to the same result here, where no financial support for any purpose is required from non-union employees. And that result is all the clearer under Minnesota State Board for Community Colleges v. Knight, 465 U.S. 271 (1984), which ruled against First Amendment claims brought by public college faculty members, professional employees of a state education system, who challenged a legislative mandate that a union selected as their exclusive bargaining agent be also the exclusive agent to meet with officials on educational policy beyond the scope of mandatory labor bargaining. The Court held that neither a right to speak nor a right to associate was infringed, id. at 289; like the appellants here, the academic employees in Knight could speak out publicly on any subject and were free to associate themselves together outside the union however they might desire. Their academic role was held to give them no variance from the general rules that there is no right to compel state officials to listen to them, id. at 286, and no right to eliminate the amplification that an exclusive agent necessarily enjoys in speaking for the unionized majority, id. at 288. Since non-union professionals, college teachers, could claim no violation of associational rights by an exclusive bargaining agent speaking for their entire bargaining unit when dealing with the state even outside collective bargaining, the same understanding of the First Amendment should govern the position

- 6 -

taken by the family care providers here, whose objection goes only to bargaining representation.

The appellants, however, cite Harris v. Quinn, 134 S. Ct. 2618 (2014), to argue that Knight has been rendered inapplicable to them owing to the fact that they are not state employees as customarily understood, even though their remuneration comes from the Commonwealth. We do not, however, read Harris as limiting Knight in a way that affects this case.

The First Amendment claimants in Harris were home care personal assistants hired by individuals but paid by the state, who objected to a compulsory agency fee requirement. The Court accepted the distinction they raised, between the conventional public employees considered in Abood and "partial" public employees who looked to the state to pay their charges for directly serving private individuals. Id. at 2368. Given the "partial" employees' comparatively attenuated relationships both to the state and to one another, the Court held that imposing an obligation to pay agency fees was insufficiently supported by the justifications of labor peace and no free riders that had been held to warrant mandatory fees in Abood. Id.

But the Harris distinction does not decide this case. While we can agree with the appellants in assuming the comparability of Harris's personal assistants and the child care providers here, the issues at stake in the two cases are different.

- 7 -

Unlike the Harris litigants, the appellants are not challenging a mandatory fee; indeed, an agency fee previously enforced against the providers here was eliminated after Harris came down. What Harris did not speak to, however, was the premise assumed and extended in Knight: that exclusive bargaining representation by a democratically selected union does not, without more, violate the right of free association on the part of dissenting non-union members of the bargaining unit. Harris did not hold or say that this rule was inapplicable to "partial" employees covered by a collective bargaining agreement. Harris, in fact, did not so much as mention Knight, and precedent supports applying its rule here.

The subsidiary arguments for reversal do no better. The appellants, for example, invoke the statutory bar to a union's discrimination against non-joiners when bargaining to reach a collective agreement. See Mass. Gen. Laws ch. 150E, § 5. This limitation, they say, creates a fiduciary obligation implying a closer and constitutionally more significant association than that resulting solely from a union's being an exclusive agent. But the state statute does no more than require the same fair representation that governs union bargaining under the National Labor Relations Act, see Abood, 431 U.S. at 221 & n.15, and the argument thus runs counter to settled federal law devoid of any hint that a duty of fairness results in impermissibly compelled association when a union is an exclusive bargaining agent for non-

union employees.  In fact, it is not the presence but the absence of a prohibition on discrimination that could well ground a constitutional objection.  See Steele v. Louisville & N.R. Co., 323 U.S. 192 (1944).

Nor does the fiduciary characterization support any claim of compelled speech on the theory that a "fiduciary" union's position is the more plausibly imputable to a non-union dissenter. No matter what adjective is used to characterize it, the relationship is one that is clearly imposed by law, not by any choice on a dissenter's part, and when an exclusive bargaining agent is selected by majority choice, it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority.  And the freedom of the dissenting appellants to speak out publicly on any union position further counters the claim that there is an unacceptable risk the union speech will be attributed to them contrary to their own views; they may choose to be heard distinctly as dissenters if they so wish, and as we have already mentioned the higher volume of the union's speech has been held to have no constitutional significance.  Knight, 465 U.S. at 288.

A trio of appellants' cited authorities may be given even briefer treatment as not on point.  Unlike the auto drivers in Wooley v. Maynard, 430 U.S. 705 (1977), the appellants are not compelled to act as public bearers of an ideological message they

disagree with.  Nor, of course, are they under any compulsion to accept an undesired member of any association they may belong to, as in Boy Scouts of America v. Dale, 530 U.S. 640 (2000), or to modify the expressive message of any public conduct they may choose to engage in, the issue addressed in Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., 515 U.S. 557 (1995).

Finally, appellants get no support from Mulhall v. UNITE HERE Local 355, 618 F.3d 1279 (11th Cir. 2010), a case on standing that recognized only a First Amendment associational interest, which it distinguished from a right.  Quite apart from its limited scope, Mulhall is an odd case for appellants to cite in their favor, since it notes the distinction between constitutional, compulsory "affiliation" with a union and compulsory union membership, which is not at issue here.  Id. at 1288.

The judgment of the district court is AFFIRMED.