In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2327

REBECCA HILL, *et al.*,

*Plaintiffs-Appellants*,

*v.*

SERVICE EMPLOYEES INTERNATIONAL UNION, HEALTHCARE ILLINOIS, INDIANA, MISSOURI, KANSAS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CV 10175 — **Manish S. Shah**, *Judge*.

ARGUED DECEMBER 7, 2016 — DECIDED MARCH 9, 2017

Before BAUER and FLAUM, *Circuit Judges*, and SHADID, *District Judge*.[*]

FLAUM, *Circuit Judge*. Appellants, home healthcare and childcare providers, challenge the exclusive-bargaining-representative provisions of the Illinois Public Labor Relations

---

[*] Of the Central District of Illinois, sitting by designation.

Act, 5 Ill. Comp. Stat. 315/1 *et seq.* ("IPLRA"). Appellants argue that the statutory scheme violates their First Amendment associational rights. The district court dismissed their complaint for failing to state a claim. We affirm.

## I. Background

Appellants provide home-based personal care and child-care services under various programs administered by Illinois agencies. The Home Services Program ("HSP"), 20 Ill. Comp. Stat. 2405/3(f), pays about 25,000 "personal assistants" who help "customers" with basic living needs. The customers are responsible for hiring and supervising the personal assistants, and the State of Illinois pays the assistants. *See generally Harris v. Quinn*, — U.S. —, 134 S. Ct. 2618, 2623–25 (2014). Illinois' Child Care Assistance Program ("CCAP"), 305 Ill. Comp. Stat. 5/9A-11, subsidizes childcare services for low-income and at-risk families. Parents choose their own providers and contribute to the cost if financially able. The program pays about 60,000 childcare providers. We refer collectively to the people working under these programs as "providers."

The IPLRA generally allows public employees in a bargaining unit to choose, by majority vote, an exclusive bargaining representative to negotiate with the State over employment terms. *See* 5 Ill. Comp. Stat. 315/3(f); *id.* 315/9(a-5).[1]

---

[1] Home healthcare and childcare providers are unlike many public employees, because the providers are defined as public employees only for purposes of the IPLRA. 5 Ill. Comp. Stat. 315/3(n). As a result, they are not considered "full-fledged" public employees. *Harris*, 134 S. Ct. at 2638. However, under the IPLRA the providers still choose exclusive bargaining representatives.

A majority of both HSP and CCAP providers chose defendant-appellee Service Employees International Union ("SEIU") as their exclusive bargaining representative. Though the SEIU bargains with Illinois over key employment terms for the providers, they are under no obligation to join the SEIU or pay dues.[2] The SEIU cannot discriminate against a provider because of his or her membership in a labor union, or lack thereof. *Id.* 315/10(a)(2). Thus, providers are able to present their own grievances to the State, publicly oppose the SEIU, and associate with whomever they want, without retaliation from the union. In effect, the IPLRA authorizes Illinois to listen to only one voice before deciding pay rates, hours, and other key work conditions for the providers, and allows a majority of a given bargaining unit to select that voice.

Appellants sued the SEIU and Illinois officials under 42 U.S.C. § 1983. The providers alleged that the IPLRA violates the First and Fourteenth Amendments because, by authorizing the SEIU to bargain on behalf of HSP and CCAP providers, the statute forces appellants into an agency-like association with the SEIU. They sought declaratory and injunctive relief prohibiting the HSP and CCAP bargaining units from choosing bargaining representatives.

Defendants-appellees moved to dismiss the complaint for failure to state a claim. The district court granted the motion, holding that "plaintiffs' theory runs counter to the established principle that a state does not infringe on associational rights

---

[2] Previously, the IPLRA contained a mandatory fee provision requiring HSP and CCAP bargaining-unit members to pay union dues. However, that part of the statute was struck down in *Harris* as creating an unconstitutional mandatory association between the providers and SEIU. 134 S. Ct. at 2639–40.

by requiring the type of exclusive representation at issue here." *Hill v. Serv. Emps. Int'l Union, Healthcare Ill., Ind., Mo., Kan.*, No. 15 CV 10175, 2016 WL 2755472, at *1 (N.D. Ill. May 12, 2016).

## II. Discussion

We review de novo a district court's grant of a motion to dismiss. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382 (7th Cir. 2016). Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To properly state a claim, a plaintiff's complaint must contain allegations that plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chi.*, 810 F.3d 476, 480 (7th Cir.), *cert. denied sub nom. Kubiak v. City of Chi., Ill.*, 137 S. Ct. 491 (2016) (internal quotation marks and citation omitted). "We accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of plaintiff[s-appellants]." *Id.* at 480–81.

The First Amendment encompasses both the freedom to associate and the freedom *not* to associate. *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 132 S. Ct. 2277, 2288, (2012) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984)). Mandatory associations are subject to exacting scrutiny, meaning they require a compelling state interest that cannot be achieved through significantly less-restrictive means. *Id.* at 2289. Appellants argue that the IPLRA creates a mandatory association subject to heightened scrutiny. However, case law forecloses such an argument.

In *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), the Supreme Court held that a Minnesota law giving elected bargaining units exclusive power to "meet and confer" with employers did not interfere with the employees' First Amendment associational rights. *Id*. at 273. The Court found that the challenged laws "in no way restrained appellees' freedom to speak … [or] to associate or *not to associate* with whom they please, including the exclusive representative." *Id.* at 288 (emphasis added). Noting that the plaintiffs were free to form advocacy groups and were not required to join the union, the Court reasoned that any "pressure to join the exclusive representative … [was] no different from the pressure to join a majority party that persons in the minority always feel … [and did] not create an unconstitutional inhibition on associational freedom." *Id.* at 289–90 (footnotes omitted). Similarly, here, appellants do not need to join the SEIU or financially support it in any way. They are also free to form their own groups, oppose the SEIU, and present their complaints to the State. Thus, under *Knight*, the IPLRA's exclusive-bargaining-representative scheme is constitutionally firm and not subject to heightened scrutiny.

*Harris* does not alter this proposition. In *Harris*, the Supreme Court assessed the IPLRA (the same law at issue here), struck down its mandatory-fee provision, and left the balance of the act intact. *See generally* 134 S. Ct. 2618. In so doing, the Court declined to extend *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) (upholding a mandatory union fee for non-union-member teachers) beyond applying to "full-fledged" public employees. 134 S. Ct. at 2638. The Court also reasoned that personal assistants are not full-fledged public employees, because they are considered public employees only for purposes of the IPLRA, and not in other contexts. *Id.* at 2635–36.

The Court held that requiring non-full-fledged public employees to pay fees supporting the union interfered with the employees' associational rights and did not serve a compelling governmental interest, *id.* at 2639–40 (citing *Knox*, 567 U.S. 298, 132 S. Ct. at 2289; *Roberts*, 468 U.S. at 623). Yet, though the Court was aware of the entire statutory scheme, it focused almost exclusively on the mandatory-fee provisions. *See id.* at 2640 ("Nor do [plaintiffs] challenge the authority of the SEIU[] to serve as the exclusive representative of all the personal assistants in bargaining with the State. All they seek is the right not to be forced to contribute to the union, with which they broadly disagree."). Thus, *Harris* did not speak to the constitutionality of the exclusive-bargaining-representative provisions of the IPLRA.

Other courts examining similar challenges and state programs have also concluded that *Harris* did not limit *Knight*'s approval of exclusive bargaining representatives. *D'Agostino v. Baker*, 812 F.3d 240, 244 (1st Cir.) (Souter, J., by designation), *cert. denied*, 136 S. Ct. 2473 (2016) ("What *Harris* did not speak to, however, was the premise assumed and extended in *Knight:* that exclusive bargaining representation by a democratically selected union does not, without more, violate the right of free association on the part of dissenting non-union members of the bargaining unit."); *see also Jarvis v. Cuomo*, 660 F. App'x 72, 74–75 (2d Cir. 2016), *cert. denied*, No. 16-753, — S. Ct. —, 2017 WL 737827 (U.S. Feb. 27, 2017) ("*Harris* addressed only the narrow question of whether individuals who were neither full-fledged state employees nor union members could be required to pay fair share fees to their bargaining unit's exclusive representative; it did not consider the constitutionality of a union serving as the exclusive representative of non-full-fledged state employees in bargaining with the

State. Thus, *Harris* does not relieve us from the duty to follow *Knight* even where, as here, plaintiffs are not full-fledged state employees.") (internal citations, brackets, and quotation marks omitted); *Bierman v. Dayton*, No. CV 14-3021 (MJD/LIB), 2017 WL 29661, at *7 (D. Minn. Jan. 3, 2017) (similar).[3] In short, the IPLRA's authorization of a majority-elected exclusive bargaining representative does not compel an association that triggers heightened First Amendment scrutiny.

Appellants argue that this case is akin to several Supreme Court association cases employing heightened scrutiny. Appellants' Br. at 11–12 (citing *Elrod v. Burns*, 427 U.S. 347, 362–63 (1976) (termination due to employee's political affiliation triggers heightened scrutiny); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714–15 (1996) (same for independent government contractors); *Roberts*, 468 U.S. at 623 (forced admittance of female club members triggers heightened scrutiny); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 577–78 (1995) (parade organizers could not be required to include among marchers a group imparting a

---

[3] Appellants argue that this Court should disregard the above authority and instead rely on *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279 (11th Cir. 2010). However, *Mulhall* is distinguishable from this appeal. In that case, the Eleventh Circuit held that a plaintiff had standing to challenge the impending forced unionization of his company. Aside from the fact that *Mulhall* did not address the merits of the plaintiff's claims, *id.* at 1288, the associational-interest analysis turned on employees being forced to belong to a union, *id.* ("while compulsory affiliation with a union does not, without more, violate the First Amendment rights of employees, it is no less true that compelling an employee to belong to a union *implicates* that person's First Amendment right not to associate") (internal citations, quotation marks, and alterations omitted). In this case, there is no allegation that appellants are forced to join—or even support—the SEIU.

message the organizers did not wish to convey absent "a compelling, or at least important, governmental object"); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 656, 658–59 (2000) ("forced inclusion of an unwanted person in a group" triggers heightened scrutiny)). However, these cases are inapposite. As the First Circuit explained in *D'Agostino* in assessing a substantially similar state program, exclusive bargaining representation does not rise to the level of the above cases, as providers "are not compelled to act as public bearers of an ideological message they disagree with[,] … accept an undesired member of any association they may belong to, … [or] modify the expressive message of any public conduct they may choose to engage in." 812 F.3d at 244 (internal citations omitted). We agree with this reasoning; the IPLRA's exclusive-bargaining provision does not create associations like those the Supreme Court has found to be constitutionally problematic.[4]

As the IPLRA does not create a mandatory association, it is not subject to heightened scrutiny. And appellants do not argue that the IPLRA would fail rational-basis scrutiny. Illinois has legitimate interests in hearing the concerns of providers when deciding what employment terms to offer them, and in having efficient access to this information. Negotiating with one majority-elected exclusive bargaining representative seems a rational means of serving these interests. *See Knight*, 465 U.S. at 291.

---

[4] Because we hold that the IPLRA does not give rise to a mandatory association, we decline to address appellants' argument that the IPLRA gives Illinois "untrammeled authority … to designate mandatory agents to speak and contract for citizens in their relations with government."

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.