# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1244

_____

Teresa Bierman; Kathy Borgerding; Linda Brickley; Carmen Gretton; Beverly Ofstie; Scott Price; Tammy Tankersley; Kim Woehl; Karen Yust,

*Plaintiffs - Appellants*,

v.

Governor Mark Dayton, in His Official Capacity as Governor of the State of Minnesota; Josh Tilsen, in His Official Capacity as Commissioner of the Bureau of Mediation Services; Emily Johnson Piper, in Her Official Capacity as Commissioner of the Minnesota Department of Human Services[1]; SEIU Healthcare Minnesota,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 14, 2018
Filed: August 14, 2018

_____

---

[1]Appellee Piper is automatically substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

COLLOTON, Circuit Judge.

In 2013, Minnesota enacted a statute that extended the state's Public Employment Labor Relations Act ("PELRA") to persons who provide in-home care to disabled Medicaid recipients. *See* Individual Providers of Direct Support Services Representation Act, ch. 128, art. 2, 2013 Minn. Laws 2173 (codified as amended at Minn. Stat. §§ 179A.54, 256B.0711). PELRA authorizes covered employees to organize and to designate by majority vote an exclusive representative to negotiate employment terms with the state. Minn. Stat. § 179A.06, subdiv. 2.

A group of parents who provide homecare services to their disabled children sued several state officials and a union, alleging that the 2013 Act violates the homecare providers' freedom of association under the First and Fourteenth Amendments. They complain that the Act unconstitutionally compels them to associate with the exclusive negotiating representative. The district court,[2] relying on *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), determined that the 2013 Act does not infringe on the providers' First Amendment rights. We agree with the application of *Knight*, and therefore affirm the judgment for the defendants.

_____

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth Circuit Rule 47E.

[2]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

## I.

PELRA allows public employees to organize by selecting an exclusive representative to "meet and confer" and "meet and negotiate" with the State regarding terms and conditions of employment. Minn. Stat. §§ 179A.06, 179A.07. If public employees select a representative, then the state employer must confer and negotiate exclusively with the representative union. *Id.* § 179A.07, subdivs. 2-3. Employees, however, need not join the union, *id.* § 179A.06, subdiv. 2, and they remain free to communicate with the State independent of the exclusive representative, so long as their activity "is not designed to and does not interfere with the full faithful and proper performance of the duties of employment or circumvent the rights of the exclusive representative." *Id.* § 179A.06, subdiv. 1.

In 2013, Minnesota extended PELRA to apply to those who provide in-home care to Medicaid recipients. Ch. 128, art. 2, 2013 Minn. Laws at 2173-78. Under the 2013 Act, Minnesota considers homecare providers to be public employees solely for purposes of PELRA. Minn. Stat. § 179A.54, subdiv. 2. The Act specifies, however, that no agreement reached between the State and the exclusive representative may interfere with certain rights of the Medicaid recipients—namely, "to select, hire, direct, supervise, and terminate the employment of their individual providers; to manage an individual service budget regarding the amounts and types of authorized goods or services received; or to receive direct support services from individual providers not referred to them through a state registry." *Id.* § 179A.54, subdiv. 4.

In June 2014, SEIU Healthcare Minnesota presented the Minnesota Bureau of Mediation Services with over 9,000 signed union authorization cards from Minnesota homecare providers requesting that SEIU serve as their exclusive representative. These homecare providers then collectively submitted an official election petition. SEIU agreed that it would not seek mandatory fees from providers who did not join the union.

After receiving notice of the upcoming election, the plaintiff homecare providers sued the Governor, the Commissioner of the Bureau of Mediation Services, and the Commissioner of the Minnesota Department of Human Services, in their official capacities, and SEIU. They sought to enjoin Minnesota from conducting the election and certifying SEIU as their exclusive representative. The providers alleged that if Minnesota conducted the election and recognized SEIU as the exclusive representative, the State would violate their right not to associate under the First Amendment. The district court refused to enjoin the election, and the vote selected SEIU as the exclusive representative. The court then granted judgment on the pleadings for the defendants on the providers' First Amendment claim.

II.

The state defendants contend that there is no case or controversy before us, because the providers lack standing to sue. They argue that the homecare providers have not alleged a concrete injury in fact that satisfies the minimum requirements of Article III. The district court thought the State's argument impermissibly conflated standing analysis with the merits of the claim and concluded that the providers had standing. The court apparently reasoned that the fact that SEIU was certified as the exclusive representative for the homecare providers was a sufficient injury in fact.

Article III standing requires the homecare providers to establish that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish injury in fact, the homecare providers must show that they have suffered a concrete and particularized injury to a cognizable interest. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 563 (1992).

-4-

One injury that the providers have alleged is an impingement on the freedom of the providers not to associate with the exclusive representative. The State argues that there is no impingement, and thus no injury, so the providers lack standing. We do not think, however, that the alleged restraint on associational freedom is the only injury alleged. The complaint, fairly construed at the pleading stage, also asserts the providers are harmed by the practical effect of the State's decision to recognize an exclusive representative. As the Court recognized in *Knight*, the "unique status" of an exclusive representative "amplifies its voice" in the negotiating process. 465 U.S. at 288. By definition, the voices of those who disagree with the exclusive representative are correspondingly diminished. Whether or not this effect on the voices of the homecare providers violates a constitutional right, we conclude that it is sufficient to constitute an injury in fact for purposes of Article III.

On the merits, the homecare providers contend that PELRA creates a "mandatory agency relationship" between them and the exclusive representative that violates their right to free association under the First and Fourteenth Amendments. This argument, however, is foreclosed by *Knight*. There, community college faculty instructors objected to Minnesota's recognition of an exclusive representative for negotiations on subjects outside the scope of mandatory bargaining under a prior version of the PELRA. *Id.* at 274, 278. The Court concluded that the State "in no way restrained" the instructors' "freedom to associate *or not to associate* with whom they please, *including the exclusive representative*." *Id.* at 288 (emphases added). In concluding that the instructors' associational freedom was not impaired, the Court emphasized that they were "free to form whatever advocacy groups they like," and were "not required to become members of [the union]." *Id.* at 289.

There is no meaningful distinction between this case and *Knight*. The current version of PELRA similarly allows the homecare providers to form their own advocacy groups independent of the exclusive representative, *see* Minn. Stat. § 179A.06, subdiv. 1, and it does not require any provider to join the union. *Id.*

-5-

§ 179A.06, subdid. 2. According to *Knight*, therefore, the State has "in no way" impinged on the providers' right not to associate by recognizing an exclusive negotiating representative. The homecare providers urge that *Knight* addressed only whether it was constitutional for a public employer to exclude employees from union meetings, but a fair reading of *Knight* is not so narrow. The Court summarily affirmed the constitutionality of exclusive representation for subjects of mandatory bargaining. 465 U.S. at 279. And the Court discussed more broadly the fact that the State treated the position of the exclusive representative as the official position of the faculty, even though not every instructor agreed, *id.* at 276, but nonetheless ruled that the exclusive representation did not impinge on the right of association. *Id.* at 288-90; *see Hill v. Serv. Emps. Int'l Union*, 850 F.3d 861, 864 (7th Cir. 2017); *Jarvis v. Cuomo*, 660 F. App'x 72, 74 (2d Cir. 2016) (per curiam); *D'Agostino v. Baker*, 812 F.3d 240, 242-43 (1st Cir. 2016).

Recent holdings in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018), and *Harris v. Quinn*, 134 S. Ct. 2618 (2014), do not supersede *Knight*. Under those decisions, a State cannot compel public employees and homecare providers, respectively, to pay fees to a union of which they are not members, but the providers here do not challenge a mandatory fee. *Janus* did characterize a State's requirement that a union serve as an exclusive bargaining agent for its employees as "a significant impingement on associational freedoms that would not be tolerated in other contexts," 138 S. Ct. at 2478, but the decision never mentioned *Knight*, and the constitutionality of exclusive representation standing alone was not at issue. Of course, where a precedent like *Knight* has direct application in a case, we should follow it, even if a later decision arguably undermines some of its reasoning. *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

\*　　　\*　　　\*

The judgment of the district court is affirmed.

_____