MICHAEL H. WATSON, JUDGE UNITED STATES DISTRICT COURT
Jade Thompson ("Plaintiff") sues the Marietta Education Association ("the Union") and Marietta Board of Education ("the Board") (collectively, "Defendants") under 42 U.S.C. § 1983. She argues that Ohio Revised Code § 4117.04 -05 is unconstitutional and moves for a preliminary injunction prohibiting Defendants from recognizing the Union as Plaintiff's representative. The State filed an amicus curiae brief in support of the statute. For the following reasons, the Court DENIES Plaintiff's motion.
I. FACTS
The following facts are taken from Plaintiff's Complaint and pertinent exhibits and declarations, and the Court addresses only those facts relevant to Plaintiff's remaining claim.[1]
Plaintiff is a Spanish teacher at Marietta High School in Washington County, Ohio. The Board manages and controls schools within the Marietta School District (including Marietta High School) and employs Plaintiff. The Union is an employee organization that represents employees of the Marietta School District. It is affiliated with the Ohio Education Association and the National Education Association.
The Board and the Union are parties to a collective bargaining agreement ("CBA"). The CBA establishes a bargaining unit of "all full and regular part-time certificated personnel employed under contract, including classroom teachers, special education teachers, psychologists, guidance counselors, librarians, school nurses, head *434 teacher(s), attendance officer, resource teachers, and full-time substitutes employed sixty-one (61) or more consecutive days in the same position in a school year." CBA § 1.01, ECF No. 15-2. As such, Plaintiff is a member of the bargaining unit as defined in the CBA. Plaintiff is not, however, a member of the Union. Thompson Decl. ¶ 8, ECF No. 15-2. In fact, Plaintiff disagrees with the Union's position on several issues. Id. ¶¶ 12-17. Nonetheless, the CBA recognizes the Union as the "sole and exclusive bargaining agent for the members of the bargaining unit."[2] CBA § 1.01, ECF No. 15-2. This provision is legal under Ohio law. Ohio Rev. Code § 4117.04 ("Public employers shall extend to an exclusive representative designated under section 4117.05 of the Revised Code, the right to represent exclusively the employees in the appropriate bargaining unit ...."); § 4117.05 (describing how "[a]n employee organization becomes the exclusive representative of all the public employees in an appropriate unit for the purposes of collective bargaining ....").
Notwithstanding the designation of the Union as bargaining unit members' exclusive representative, bargaining unit members are neither required to join the Union nor to contribute financially to the Union. Benson Decl. ¶ 10, ECF No. 28-4; Ohio Rev. Code § 4117.03(A)(3) ("Public employees have the right to: (1) Form, join, assist, or participate in, or refrain from forming, joining, assisting, or participating in, except as otherwise provided in Chapter 4117. of the Revised Code, any employee organization of their own choosing ...."). Further, any bargaining unit member (whether a member of the Union or not) is "free to criticize [the Union's] positions or take positions different from those taken by [the Union]." Benson Decl. ¶ 11, ECF No. 28-4. Moreover, the Union recognizes that "there will always be teachers or other employees represented by [the Union] who disagree with its positions." Id. ¶ 12.
Plaintiff contends that Ohio law and the CBA have violated Plaintiff's First and Fourteenth Amendment rights to free speech and free association[3] by designating the Union as Plaintiff's exclusive representative. Specifically, she contends that the designation of the Union as her exclusive representative amounts to compelled speech and compelled association. She seeks a declaration that Ohio Revised Code §§ 4117.04 -.05 are unconstitutional and a preliminary injunction prohibiting Defendants from recognizing the Union as her representative.
II. STANDARD OF REVIEW
Preliminary injunctions are "extraordinary and drastic remed[ies] ... never awarded as of right." Platt v. Bd. of Comm'rs on Grievances and Discipline of Ohio Supreme Court , 769 F.3d 447, 453 (6th Cir. 2014) (internal quotation marks and citation omitted). Nonetheless, Federal Rule of Civil Procedure 65 permits the Court to issue preliminary injunctions upon the satisfaction of certain requirements. The Court considers four factors in *435 determining whether to grant injunctive relief: (1) whether the movant has established a substantial probability of success on the merits; (2) whether the movant would suffer irreparable harm in the absence of an injunction; (3) whether an injunction would substantially harm third parties; and (4) whether an injunction would serve the public interest. Winnett v. Caterpillar, Inc. , 609 F.3d 404, 408 (6th Cir. 2010). The factors are not prerequisites; rather, they must be balanced in weighing the equities involved. Capobianco, D.C. v. Summers , 377 F.3d 559, 561 (6th Cir. 2004). The plaintiff bears the burden to justify such drastic relief, even in First Amendment cases, Platt , 769 F.3d at 453 (citation omitted), and it should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat'l Res. Def. Council, Inc. , 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (citation omitted).
III. ANALYSIS
A. Likelihood of Success on the Merits
As stated above, Plaintiff contends that the designation of the Union as her exclusive representative amounts to compelled speech and forces her into an expressive association, in violation of the First and Fourteenth Amendments. Before turning to the merits of those arguments, the Court notes that Plaintiff also alleged in her Complaint that the designation of the Union as her exclusive representative impinges her ability to engage in her own free speech or her ability to petition the government, see Compl. ¶ 117 ("That designation restricts the Plaintiff's speech and petitioning.") (emphasis added), but Plaintiff has waived those arguments. Indeed, at oral argument, counsel for Plaintiff repeatedly asserted that Plaintiff is not alleging that the statutes violate a right of Plaintiff to be heard by the Board or to bargain on her own behalf. Tr. 4:17-24, 16:8-10, 33:22-34:12, 36:12-23; 38:3-8, ECF No. 43. With that in mind, the Court considers the merits of only Plaintiff's compelled association and compelled speech arguments.
1. Compelled Association
Plaintiff contends that the designation of the Union as her exclusive representative forces her into an expressive association with the Union. For the reasons that follow, the Court concludes that Minnesota State Bd. for Community Colleges v. Knight , 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984) applies to Plaintiff's forced association claim, and although Knight did not itself involve a forced association claim, the broad reasoning in the opinion forecloses such a claim.
The district court in Knight distinguished between "meet and negotiate" sessions (collective bargaining) and "meet and confer" sessions. With respect to collective bargaining, the district court rejected various attacks on the union's ability to serve as the exclusive representative under PELRA[4] and concluded that " Abood *436 squarely upholds the constitutionality of exclusive representation bargaining in the public sector." Knight v. Minn. Cmty. Coll. Faculty Ass'n , 571 F.Supp. 1, 4 (D. Minn. 1982) (citing Abood v. Detroit Bd. of Edu. , 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), overruled by Janus v. Am. Fed. of State, Cty., and Mun. Emps., Council 31 , --- U.S. ----, 138 S.Ct. 2448, 201 L.Ed.2d 924 (2018) ). In rejecting the notions that PELRA impermissibly delegated state sovereignty to the union, impermissibly granted the union the power to make "economic laws," and that the union was, in essence, a political party, the district court held that "Minnesota may provide for exclusive representation by an employee association in the public sector and may require that nonmembers of the association financially support its collective bargaining efforts through a fair share fee." Id. at 5. On appeal, the Supreme Court summarily affirmed that holding, rejecting "the constitutional attack on PELRA's restriction to the exclusive representative of participation in the 'meet and negotiate' process." Knight , 465 U.S. at 279, 104 S.Ct. 1058 (citing 460 U.S. 1048, 103 S.Ct. 1493, 75 L.Ed.2d 927 (1983) ).
However, the district court in Knight also concluded that the "meet and confer" process violated nonmembers' First Amendment speech and associational rights. In a separate opinion, the Supreme Court reversed that portion of the district court's opinion. The Supreme Court's specific holding in Knight (as it related to the appellees' freedom of association claim with respect to the "meet and confer" sessions) was that PELRA's restriction of participation in "meet and confer" sessions to the exclusive representative did not violate the nonmembers' associational rights. Knight , 465 U.S. at 273, 104 S.Ct. 1058. As such, the holding is not directly dispositive of the claim Plaintiff makes here-that the very designation of the Union as Plaintiff's exclusive representative forces an association between Plaintiff and the Union.
In coming to the holding in Knight , however, the Supreme Court made broad statements about PELRA and the freedom of association. For instance, the Supreme Court stated that "[t]he state has in no way restrained appellees' ... freedom to associate or not to associate with whom they please, including the exclusive representative." Knight , 465 U.S. at 288, 104 S.Ct. 1058. Similarly, it stated later that the nonmembers' associational freedom was not impaired because the nonmembers were both "free to form whatever advocacy groups they like" and were "not required to become members of" the union. Id. at 289, 104 S.Ct. 1058. These broad statements at the very least suggest that because joinder in the Union is not required, the First Amendment right to be free from compelled association is still protected. See Bierman v. Dayton , 900 F.3d 570, 574 (8th Cir. 2018) (rejecting the same argument Plaintiff makes here about the narrowness of Knight's holding and reading Knight broadly as affirming that exclusive representation, alone, does not amount to compelled association).
PELRA contained a fair share provision, but the nonmembers in Knight did not challenge the fair share provision as a violation of their speech or associational rights. Of course, Janus has since established that fair share provisions violate the First Amendment. But because the fair share provision was not at issue in Knight , the Supreme Court's association claim analysis in that case rested on the reasoning above-the fact that employees were *437 not forced to join the union meant that their associational rights were not infringed by designating the union as those employees' exclusive representative for purposes of meet and negotiate or meet and confer.
That reasoning is applicable to this case. Indeed, every court that has considered the argument raised by Plaintiff has rejected it as foreclosed by Knight . Hill v. Serv. Emps. Int'l Union , 850 F.3d 861, 863 (7th Cir. 2017) (rejecting claim that designation of exclusive representative forced employees into an "agency-like association with the [union]" and finding that, "under Knight , the IPLRA's exclusive-bargaining-representative scheme is constitutionally firm and not subject to heightened scrutiny."); Jarvis v. Cuomo , 660 F. App'x 72, 74 (2d Cir. 2016) (finding the plaintiff's claim that designation of an exclusive representative amounted to forced association was "foreclosed" by Knight where the employees were not required to join the union); D'Agostino v. Baker , 812 F.3d 240, 244 (1st Cir. 2016) (finding Knight contained the implied premise "that exclusive bargaining representation by a democratically selected union does not, without more, violate the right of free association on the part of dissenting non-union members of the bargaining unit."); Reisman v. Associated Faculties of the Univ. of Maine , 356 F.Supp.3d 173 (D. Maine 2018) (rejecting the plaintiff's compelled association claim as foreclosed by Knight ); Mentele v. Inslee , No. C15-5134-RBL, 2016 WL 3017713, at *3 (W.D. Wash. May 26, 2016) (stating that Knight "also reasoned that the restriction did not infringe employees' associational freedoms because they did not have to join the representative group" and finding no forced association where employee was not required to join or pay dues to the union).
As Plaintiff points out, all but one of those cases was decided before the Supreme Court's decision in Janus . Janus overruled prior Supreme Court precedent, Abood v. Detroit Bd. of Edu. , regarding the constitutionality of fair share fees paid by nonmembers to a union. Janus does not change the above analysis, though.
In overruling Abood, Janus held that forcing nonmembers to pay fair share fees to the exclusive representative union amounts to compelled subsidization of private speech, which violates the nonmembers' First Amendment free speech and association rights. Janus , 138 S.Ct. at 2459-60. There is some dicta in Janus stating that the appointment of an exclusive representative itself infringes on nonmember employees' associational rights. Nonetheless, to the extent such dicta is at odds with Knight's reasoning that exclusive representation does not infringe associational rights, Janus's discussion in no way questions whether any resulting infringement of First Amendment associational rights in the labor context satisfies exacting scrutiny. See, e.g. , id. at 2478 ("It is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees-itself a significant impingement on associational freedoms that would not be tolerated in other contexts. We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views."); id. at 2466 (discussing federal law, the Postal Service, and state law permitting the appointment of exclusive representatives without any hint of disapproval of the same); id. at 2469 (implying that the duty of fair representation ameliorates any infringement on First Amendment rights caused by appointment of exclusive representative); id. at 2485 n. 27 ("States can keep their labor-relations systems exactly as they are-only they cannot force *438 nonmembers to subsidize public-sector unions. In this way, these States can follow the model of the federal government and 28 other States.").
At bottom, although Janus overrules Abood with respect to the issue of fair share fees, it does not directly question Abood's foundational premise that "[t]he principle of exclusive union representation ... is a central element in the congressional structuring of industrial relations" because it "avoids the confusion that would result from attempting to enforce two or more agreements specifying different terms and conditions of employment[;] ... prevents inter-union rivalries from creating dissention within the work force and eliminating the advantages to the employee of collectivization[;] ... frees the employer from the possibility of facing conflicting demands from different unions, and permits the employer and a single union to reach agreements and settlements that are not subject to attack from rival labor organizations." Abood v. Detroit Bd. of Edu. , 431 U.S. 209, 220-21, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977).[5]
Indeed, even after the Supreme Court issued Janus , the United States Court of Appeals for the Eighth Circuit concluded that a compelled association argument identical to that made by Plaintiff in this case was "foreclosed by Knight " because there was "no meaningful distinction between [that plaintiff's] case and Knight ." Bierman v. Dayton , 900 F.3d 570, 574 (8th Cir. 2018).[6] The Eighth Circuit concluded that Janus did not supersede Knight because "the constitutionality of exclusive representation standing alone was not at issue" in Janus , and Janus did not even mention Knight . Id.
This Court agrees. Plaintiff argues that Janus changes the landscape on her compelled speech and compelled association claims, but plaintiffs in prior cases made the same argument about Harris v. Quinn , 573 U.S. 616, 134 S.Ct. 2618, 189 L.Ed.2d 620 (2014). In rejecting compelled speech and compelled association claims as foreclosed by Knight , those pre- Janus courts concluded that Harris "did not speak to the constitutionality of the exclusive-bargaining-representative provisions" of the statutes at issue and, therefore, "did not limit Knight 's approval of exclusive bargaining representatives." Hill , 850 F.3d at 864 (citing Jarvis , 660 F. App'x at 74-75 ; D'Agostino , 812 F.3d at 244 ); see also Mentele , 2016 WL 3017713, at *3. Analogously, this Court finds that Janus also failed to consider the constitutionality of the mere designation of exclusive representatives and, therefore, likewise does not limit Knight's applicability.
In sum, even after Janus , it remains the case that "[t]he Supreme Court has not ... revisited Knight or otherwise overturned legislative authorizations of collective and exclusive bargaining." Clark v. City of Seattle , No. C17-382RSL, 2017 WL 3641908, at *3 (W.D. Wash. Aug. 24, 2017). It may be that the Supreme Court extends Janus in the future and declares that the appointment of exclusive representatives itself amounts to compelled association in violation of the First Amendment, but, for now, Knight seems to foreclose such an argument. See Rodriguez de Quijas v. Shearson/Am. Exp., Inc. , 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)
*439 ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). Because Knight likely forecloses Plaintiff's compelled association claim, Plaintiffs are not likely to succeed on the merits of that claim.
2. Compelled Speech
Plaintiff argues that Knight is not controlling on Plaintiff's compelled speech claim because no compelled speech claim was brought in Knight.
Plaintiff is correct insofar as she argues that Knight did not explicitly consider a compelled speech claim. However, in reviewing the constitutionality of PELRA's restriction of participation in "meet and confer" sessions to the exclusive representative, the Supreme Court broadly proclaimed that nonmembers' "speech and associational rights ... have not been infringed ..."[7] Knight , 465 U.S. at 288, 104 S.Ct. 1058. With respect to freedom of speech, the Supreme Court in Knight reasoned that "[t]he state has in no way restrained appellees' freedom to speak on any education-related issue ...." Id. It noted that "the unique status of the exclusive representative in the 'meet and confer' process amplifies its voice in the policymaking process" but found that such amplification of the union's voice over the nonmembers' voices did not impair nonmembers' constitutional freedom to speak. Id. It also concluded that the union's voice was no more amplified in "meet and confer" sessions than it was in "meet and negotiate" sessions, and the Court had summarily upheld the constitutionality of exclusive representation in collective bargaining, suggesting that exclusive representation was also constitutional in the "meet and confer" context. Id. Finally, the Supreme Court concluded that the union's ability to retaliate against bargaining unit members who spoke out against the union by refusing to appoint those bargaining unit members to "meet and confer" committees did not unconstitutionally chill First Amendment speech. Id. at 289, 104 S.Ct. 1058. Thus, Knight concluded that the statutory scheme prohibiting the plaintiffs from participating on their own behalf in "meet and confer" sessions (because the union served as the exclusive representative) did not unconstitutionally infringe their free speech rights.
Although Knight did not involve a compelled speech claim, several of the same cases addressed above have rejected compelled speech claims, along with compelled association claims, based on the broad reasoning in Knight. See D'Agostino , 812 F.3d at 244 ("Nor does the fiduciary characterization support any claim of compelled speech on the theory that a 'fiduciary' union's position is the more plausibly imputable to a non-union dissenter."); see also Reisman , 356 F.Supp.3d 173 ; Hill , 850 F.3d at 865 n.4 ("Because we hold that the IPLRA does not give rise to a mandatory association, we decline to address appellants' argument that the IPLRA gives Illinois 'untrammeled authority ... to designate mandatory agents to speak and contract for citizens in their relations with government.' "); Uradnik v. Inter Faculty Org. , No. 18-1895(PAM/LIB), 2018 WL 4654751 (D. Minn. Sept. 27, 2018) (rejecting compelled speech claim as foreclosed *440 by Knight and stating, "The IFO speaks for the collective, and not for individual members; those individuals may speak their mind freely and speak to their public employer on their own behalf.").
Plaintiff argues that Knight is inapplicable to her compelled speech claim because the plaintiffs in Knight sought the right to represent themselves at "meet and confer" sessions whereas Plaintiff does not seek the right to represent herself (or to be represented by a different organization) in either "meet and negotiate" or "meet and confer" sessions. Because she asks only that the Union not be deemed her representative or deemed to speak for her, she argues, her case is unlike Knight.
This Court agrees with the above cases that Knight forecloses Plaintiff's compelled speech claim even though Knight did not involve a compelled speech claim. Plaintiff's argument is unpersuasive as her position and the position of the plaintiffs in Knight are two sides of the same coin. That is, if the Court grants Plaintiff her requested relief-prohibiting the Union from holding itself out as representing Plaintiff or the Board from recognizing the Union as representing her, then Plaintiff (and any future employees who choose not to be represented by the Union) must either: (1) be given some right to bargain (on their own behalf or by joining competing unions that have the right to bargain on their behalf); or (2) be entirely deprived of representation at the bargaining table.
The former scenario would necessarily destroy the Union's status as the sole negotiator, which Plaintiff argued at oral argument she does not seek to do.[8] E.g. , Tr. 4:17-24, ECF No. 43. Moreover, the right to bargain on their own behalf was exactly the right the plaintiffs sought-and which was found nonexistent-in Knight . Knight , 465 U.S. at 283, 104 S.Ct. 1058.
Only under the latter of the above scenarios would Plaintiff's requested relief not disrupt the Union's right to be the exclusive negotiator. But a system in which the Union is the sole negotiator on matters of collective or permissible bargaining, and yet some public employees are not represented by the Union, is arguably unconstitutional as itself violating the First Amendment. See Janus , 138 S.Ct. at 2469 ("[D]esignating a union as the exclusive representative of nonmembers substantially restricts the nonmembers' rights. Protection of their interests is placed in the hands of the union, and if the union were free to disregard or even work against those interests, these employees would be wholly unprotected. That is why we said many years ago that serious constitutional questions would arise if *441 the union were not subject to the duty to represent all employees fairly." (internal quotation marks and citations omitted) ). Just as constitutional issues would arise were unions appointed exclusive representatives of nonmembers but had no duty to fairly represent those nonmembers, even more serious issues would arise if a union was the sole entity allowed to bargain with the State but did not represent nonmembers (who were prevented from being represented by any other entity or by themselves). In both situations, nonmembers would be "wholly unprotected."
In sum, Plaintiff's requested relief would leave nonmembers completely unrepresented at the bargaining table unless they were given the concomitant right to represent themselves or be represented by another group of their choosing. The Supreme Court found no such concomitant right existed in Knight. Thus, although Plaintiff asks for relief different than what the plaintiffs sought in Knight , the holding in Knight nonetheless forecloses Plaintiff's claim.
Further, D'Agostino explained that:
[n]o matter what adjective is used to characterize it, the relationship [between the nonmember and the union] is one that is clearly imposed by law, not by any choice on a dissenter's part, and when an exclusive bargaining agent is selected by majority choice, it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority. And the freedom of the dissenting appellants to speak out publicly on any union position further counters the claim that there is an unacceptable risk the union speech will be attributed to them contrary to their own views; they may choose to be heard distinctly as dissenters if they so wish ....
812 F.3d at 244 (citing Knight , 465 U.S. at 288, 104 S.Ct. 1058 ). Indeed, Knight itself recognized that the respondent in the case "consider[ed] the views expressed by the statewide faculty 'meet and confer' committees to be the faculty's official collective position. It recognizes, however, that not every instructor agrees with the official faculty view on every policy question." Knight , 465 U.S. at 277, 104 S.Ct. 1058.
Here, Defendants did not offer any declarations from Board members that the Board does not assume the Union's speech reflects the views of every bargaining unit member. Still, David Millstone, who negotiated hundreds of collective bargaining agreements while representing public and private employers, declared that:
public employers were certainly aware that not all employees represented by the union shared the same views as the union. Public employers were aware that the union was supported by a majority of the employees in the bargaining unit, but did not necessarily have the support of all employees in that unit, and that some represented employees disagreed with the union's positions and views.
Millstone Decl. ¶ 14, ECF No. 28-1. Indeed, this sentiment is practically a matter of common sense. See D'Agostino, supra ; Clark v. City of Seattle , No. C17-0382RSL, 2017 WL 3641908, at *3 (W.D. Wash. Aug. 24, 2017) ("The selection of an [exclusive driver representative] by majority vote-as specified in the Ordinance-would make unreasonable any assumption that all members of the bargaining unit support the representative, much less every one of its policy positions." (citation omitted) ). Thus, although the Union represents Plaintiff, and in that representation "speaks for her," realistically, it is speaking for the bargaining unit members as a collective rather than purporting to espouse *442 specific views for any individual bargaining unit member.
Finally, just as Janus does not undermine Knight as it relates to Plaintiff's compelled association claim, neither does it undermine Knight with respect to her compelled speech claim. Janus held that fair share fees amount to unconstitutional compelled subsidization of private speech. Janus , 138 S.Ct. at 2460. Janus does not dictate success on Plaintiff's compelled speech claim, however.
As noted above, Janus does not challenge Abood's determination that exclusive representation furthers the compelling State interest of labor peace and even suggests that exclusive representation is the only appropriately tailored way of furthering that interest. Id. at 2466.
Indeed, the Janus Court dispelled the notion that a "State has a compelling interest in requiring the payment of agency fees because (1) unions would otherwise be unwilling to represent nonmembers ...." Id. at 2467. In finding that unions would continue to represent nonmembers even without agency fees, the Court discussed the benefits of exclusive representation, including that, as an exclusive representative, "the union [is] given the exclusive right to speak for all the employees in collective bargaining, [and] the employer is required by state law to listen to and to bargain in good faith with only that union." Id. at 2467 (citation omitted). Thus, even in explicitly recognizing that an exclusive representative union speaks for all employees in a bargaining unit, the Janus Court offered no hint that such a scheme, in and of itself, amounted to compelled speech that violated bargaining unit members' First Amendment rights.
Similarly, in addressing the respondent's originalism argument, the Janus Court concluded that public employees did not historically lack free speech protections. Id. at 2469-72. But even in stating that public-sector unionization "would astound those who framed and ratified the Bill of Rights," the Court explicitly said that it was "not in any way questioning the foundations of modern labor law." Id. at 2471 n.7. Thus, Janus does not undermine Knight or support Plaintiff's compelled speech claim, and Plaintiff is unlikely to prevail on that claim.
In conclusion, Plaintiff is not likely to succeed on the merits of either her compelled speech or compelled association claim, and this factor weighs against granting a preliminary injunction.
B. Irreparable Harm
The Court next considers whether Plaintiff would suffer irreparable harm without the requested injunction. When determining this factor, "[s]uch harm must be 'likely,' not just possible." Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc. , 565 F. App'x 477 at 482 (6th Cir. 2012) (quoting Winter , 555 U.S. at 22, 129 S.Ct. 365 ). "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." Id. (citations and internal quotation marks omitted).
Plaintiff's purported irreparable harm is the deprivation of her First Amendment rights to free speech and free association. Any such harm would be irreparable, but, because the Court has concluded that Plaintiff is unlikely to prevail on her First Amendment claims, the Court also finds that Plaintiff will not likely suffer irreparable harm absent an injunction. This factor therefore weighs against granting a preliminary injunction.
C. Harm to Third Parties
The Union and the Board are currently negotiating a successor CBA, and a *443 preliminary injunction could substantially harm the Union, the Board, and other bargaining unit members. If the Court granted Plaintiff's requested injunction, it would be utterly unclear to both the Union and the Board how to proceed with negotiations as they related to the terms and conditions of Plaintiff's employment. Plaintiff is not seeking the right to negotiate her contract herself or through another entity, and if the Union did not represent her in negotiations, the Board would be unable to negotiate her contract. Further, Plaintiff's proposed injunction prohibits the Board from recognizing the Union as the representative of any bargaining unit members who are not members of the Union, see ECF No. 15-3, leaving each of those third parties likewise unrepresented in negotiations. Such relief would harm those third parties, and the Court finds this factor weighs against granting Plaintiff's requested relief.
D. Public Interest
The public has an interest in protecting the freedom of speech, and "it is always in the public interest to prevent the violation of a party's constitutional rights." G & V Lounge, Inc. v. Mich. Liquor Control Comm'n , 23 F.3d 1071, 1079 (6th Cir. 1994) (quoting Gannett Co., Inv. v. DePasquale , 443 U.S. 368, 383, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) ). The Court has concluded, though, that Ohio's exclusive representative system does not likely violate Plaintiff's free speech or association rights, and the public interest also lies in avoiding the type of labor strife that predated passage of Ohio's collective bargaining law. Accordingly, this factor weighs against granting Plaintiff's requested preliminary injunction.
IV. CONCLUSION
For the above reasons, Plaintiff's motion for a preliminary injunction, ECF No. 15, is DENIED. The Clerk shall terminate ECF No. 15 from the pending motions list.
IT IS SO ORDERED.

Plaintiff originally challenged the collective bargaining agreement's provision requiring the Board to exact a "fair share" fee (in the same amount as union dues) from non-union-member employees' paychecks and remit the same to the Union (Count I). She also challenged the automatic nature of that provision and the accompanying opt-out requirement (Count II). The parties later jointly moved to dismiss those counts as moot after the Board notified Plaintiff that it had stopped deducting a fair share fee from nonmembers following the Supreme Court's decision in Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31 , --- U.S. ----, 138 S.Ct. 2448, 201 L.Ed.2d 924 (2018) and after the Union recognized that it was not entitled to such fees absent affirmative consent from a nonmember. Joint Mot., ECF No. 29. The Court granted the parties' joint motion and dismissed Counts I and II. Order, ECF No. 30.

For ease of reference, the Court will sometimes throughout this Opinion and Order refer to any future employee organization duly elected as an exclusive representative of public employees in an appropriate bargaining unit for the purposes of collective bargaining or permissive bargaining as "the Union."

Plaintiff also alleges that the designation of the Union as her exclusive representative violates her right to petition the Government for redress of grievances, Compl. ¶¶ 7, 116, 117, Prayer for Relief (C), ECF No. 1, but the Court does not address this claim as Plaintiff did not mention it in her motion for a preliminary injunction or during the preliminary injunction hearing.

The Public Employment Labor Relations Act ("PELRA") was the statute under attack in Knight . It permitted the designation of an exclusive representative and, where such an exclusive representative was appropriately designated, required public employers to "meet and negotiate" on matters subject to collective bargaining only with that exclusive representative. Knight , 465 U.S. at 274, 104 S.Ct. 1058. PELRA also required public employees to designate a representative to "meet and confer" with the public employer on matters related to employment that fell outside the scope of mandatory negotiations, and, if the employees had selected an exclusive representative for collective bargaining purposes, that representative also served as the "meet and confer" representative. Id. In short, if an exclusive representative was selected, public employers were not permitted to "meet and negotiate" or "meet and confer" with any bargaining unit member other than through the exclusive representative. Id. at 275, 104 S.Ct. 1058.

The Union has presented evidence in this case that Ohio also has an interest in labor peace and that exclusive representation furthers that interest. See, e.g. , Millstone Decl. ¶¶ 8, 12, 15, 16; Buettner Decl. ¶¶ 7, 11, 13, 14, ECF No. 28-2.

In Bierman , as here, the employees were not forced to join the union and were not prevented from joining their own advocacy groups. Bierman , 900 F.3d at 574.

And, in summarizing the First Amendment claim, the Supreme Court broadly stated that the plaintiffs were "[u]nable to demonstrate any infringement of any First Amendment right ...." Id. at 291, 104 S.Ct. 1058 (emphasis added); see also id. at 290 n.12, 104 S.Ct. 1058 ("appellees ... speech and associational rights have been wholly unimpaired.").

Plaintiff contends her requested relief would not "end collective bargaining or open it up to multiple competing unions" and argues that her requested relief would still permit the Union to "continue speaking, ... continue negotiating terms and conditions of employment and other policy concessions with the Board.... and continue to apply the terms of its collective-bargaining agreement to all bargaining-unit members" Reply 2, ECF No. 35. It is not clear to the Court, though, exactly how it could grant Plaintiff her requested relief while permitting the Union to be the sole negotiator with the Board because it is the very act of representing Plaintiff in negotiating terms and conditions of employment and other policy concessions that Plaintiff alleges violates her First Amendment rights. At bottom, the Court cannot square Plaintiff's contentions that "the labor union, as well as the board, can largely continue as they've been going," Tr. 34:13-14, with her legal arguments and requested relief. If, however, Plaintiff is seeking nothing more than to maintain the status quo with the addition of a statement from both the Union and the Board that both entities recognize that the Union's views are not to be presumed to be Plaintiff's views, then the Court believes the parties may be able to resolve this lawsuit and recommends the parties engage in good faith settlement discussions.