Vernon Buchannan *vs.* Superintendent of Massachusetts Correctional Institution at Concord & another.[1]

Middlesex.   December 13, 1979. — April 10, 1980.

Present: Armstrong, Rose, & Kass, JJ.

*Imprisonment,* Enforcement of discipline. *Moot Question. Practice, Civil,* Moot case.

In an action by a prisoner alleging that it was a violation of G. L. c. 127, § 40, to impose on him thirty days of solitary confinement for two disciplinary infractions, assaulting an employee and interfering with the orderly running of the institution, both of which arose from a single course of conduct, the judge did not err in dismissing the action as moot after the Commissioner of Correction reduced the prisoner's isolation time to fifteen days. [546-550]

Civil action commenced in the Superior Court on November 17, 1977.

The case was heard by *Hayer,* J., on a motion for summary judgment.

---

[1] Commissioner of Correction.

Buchannan *v.* Superintendent of Massachusetts Correctional Institution at Concord.

*Martin C. Gideonse* for the plaintiff.

*Annette C. Benedetto,* Assistant Attorney General, for the defendants.

KASS, J.  For multiple infractions of the code of disciplinary offenses[2] governing inmates of State correctional facilities, the plaintiff Buchannan, an inmate of the Massachusetts Correctional Institution at Concord, was ordered to thirty days of solitary confinement.  That punishment, he contends in a complaint asking for declaratory and injunctive relief, offends against G. L. c. 127, § 40, as amended through St. 1957, c. 777, § 17, which limits the period of confinement in an isolation unit to "a period not to exceed fifteen days for any one offence."[3]

Buchannan's punishment occurred in the aftermath of an incident involving the use of obscene and abusive language (a violation of subsection 19 of the Code of Offenses, 103 Code Mass. Regs. 430.22[19] [1978]) directed by Buchannan against an employee of the institution and a related fight between Buchannan and that employee which occurred about an hour later.  As originally described in a disciplinary report, this altercation was accompanied by language which also was less than chivalric, a circumstance which does not induce wonder.  For the first episode Buchannan was charged with using abusive language; for the second episode he was charged with using abusive and threatening language, assault of an employee,[4] and engaging in conduct

---

[2] The Code of Offenses appears at 103 Code Mass. Regs. 430.22 (1978) and is part of the regulations of the Department of Correction governing disciplinary actions issued July 21, 1977, and now appearing as 103 Code Mass. Regs. 430 et seq. (1978).

[3] The entire text of the statute reads as follows:  "For the enforcement of discipline, an inmate in any correctional institution of the commonwealth may, at the discretion of its superintendent, be confined, for a period not to exceed fifteen days for any one offence, to an isolation unit.
"Such isolation units must provide light, ventilation and adequate sanitary facilities, may contain a minimum of furniture, and shall provide at least one full meal daily."

[4] A violation of 103 Code Mass. Regs. 430.22(18), "Fighting with, assaulting or threatening another person. . . ."

which disrupts or interferes with the security or orderly running of the institution.[5] A disciplinary hearing panel found Buchannan guilty of abusive speech during the first episode, but imposed only a warning as a sanction. As to the second episode, the one which occurred an hour later, a majority of the panel found Buchannan had assaulted an employee of the institution and had interfered with the orderly running of the institution, but had not spoken abusively.

It is Buchannan's position that this division of the second episode into separate units of violation of the disciplinary code and the consequential imposition of thirty days of solitary confinement constitute an impermissible end run around the strictures of G. L. c. 127, § 40. Section 40 came into the statutory scheme in the context of a thoroughgoing reorganization of the penal system by St. 1955, c. 770, based upon the report and recommendations of the Governor's Committee to Study the Massachusetts Correctional System, 1955 Sen. Doc. No. 750. See *Gardiner* v. *Commissioner of Correction*, 5 Mass. App. Ct. 425, 431-432 (1977) (Goodman, J., dissenting). That report, at p. 43, recommended reform of the manner in which solitary confinement had been employed and described the then existing usage as "antiquated and ineffective as correctional procedures."[6]

Few of the thirty-one infractions listed in the Code of Offenses at 103 Code Mass. Regs. 430.22 would not also constitute simultaneous violations of two other categories of offense itemized in the Code: first, "[c]onduct which disrupts or interferes with the security or orderly running of the institution" and second, "[v]iolating any departmental rule or regulation, or any other rule, regulation, or condition of an institution. . . ." 103 Code Mass. Regs. 430.22(8) and (2). Were the correction institutions of the Commonwealth to

---

[5] A violation of 103 Code Mass. Regs. 430.22(8).

[6] Prior to amendment in 1955, G. L. (Ter. Ed.) c. 127, § 40, read as follows: "The warden of the state prison, with the consent of the commissioner, may, for such time as he considers necessary to produce penitence or to promote good order and discipline, confine obstinate and refractory prisoners to solitary labor."

tack the redundant charges of conduct which disrupts or interferes with the institution and violation of the rules of the institution to any of a variety of infractions of the Code of Offenses (e.g., gambling or attempting to bribe a prison officer), with consequent punishment of forty-five days of solitary confinement, the policy of sparing use of isolation enunciated in § 40 would be much eroded.[7] Such a practice would have a fault analogous to the imposition of cumulative sentences for conviction of multiple offenses where the lesser offense arises out of facts identical with those which supported conviction of the greater offense. This was proscribed by *Kuklis* v. *Commonwealth*, 361 Mass. 302, 307-309 (1972). The Department of Correction recognized as much when, by Commissioner's Bulletin 77-16, effective October 13, 1977, it announced a policy of imposing no more than "thirty (30) days isolation time . . . for disciplinary offenses arising out of the same or substantially connected act(s) or transaction(s), unless specifically authorized by the Commissioner of Correction."

That policy, however, does not answer the questions which Buchannan has posed: whether the word offense, as employed in G. L. c. 127, § 40, refers to a single course of conduct, and whether an inmate may be confined in isolation for more than fifteen days for multiple violations of the Code of Offenses arising out of a single course of conduct. For example, is the maximum isolation time with which a prisoner may be punished fifteen days if, in a single course of conduct, he assaults a guard, damages State property, and exhorts fellow inmates to a general uprising? This illustration, including offenses which do not develop from the same set of facts, demonstrates the difficulties to which the plaintiff's view of the problem might lead.

We think the question put is not one we need decide because, on the facts of this case, the judge below correctly determined that Buchannan's case had become moot and, accordingly, entered a judgment dismissing the action.

---

[7] As to that policy, see McGrath, Criminal Law, Procedure, and Administration, 1955 Ann. Survey Mass. Law 119, 126-127.

Following imposition against him of the solitary confinement sanction, Buchannan obtained a preliminary injunction against enforcement of the second fifteen-day period of isolation. Three days before a scheduled hearing on cross motions for summary judgment, the Commissioner of Correction reduced Buchannan's isolation time from thirty to fifteen days. Buchannan argues that his case did not become moot because the controversy over the meaning of G. L. c. 127, § 40, remains and the question is one capable of repetition, yet evading review. This, however, ignores the teaching of *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 703-708 (1976), on the precise point of mootness in the context of prisoners' rights. There, the prisoner, Blake, prayed for a declaration of his right to appear personally before the Parole Board in support of an application for early eligibility for parole. Pending final determination of his case on appeal, Blake was discharged from custody, but insisted he still had a stake in the outcome of the controversy because the denial of early parole might have a bearing on any future encounters he might experience with the criminal justice system. The court concluded that so speculative a stake must be considered relatively insignificant, *id.* at 703, particularly when weighed against the reasons for the mootness rule. *Id.* at 706-707.

An effort to make Buchannan's complaint a class action on behalf of prisoners similarly situated was abandoned, and there is no basis, therefore, to decide the case on the basis of prisoners against whom disciplinary sanctions are still pending. Compare *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 297-298 (1975). See also *United States Parole Commn.* v. *Geraghty*, 445 U.S. 388, 404 (1980) (action brought on behalf of a class of prison inmates does not, as to an appeal from a denial of the class certification, become moot upon the named plaintiff's release).

Nor do we think that the question raised is one likely to recur and which will evade judicial review. From the single instance of the remission of the balance of Buchannan's solitary confinement punishment we cannot jump to

Buchannan *v.* Superintendent of Massachusetts Correctional Institution at Concord.

the conclusion that the defendants voluntarily ceased their allegedly wrongful conduct in order to escape review. Compare *Wolf* v. *Commissioner of Pub. Welfare, supra* at 299. It is equally likely, especially in light of the Commissioner of Correction's bulletin of October 13, 1977, referred to above, that the Commissioner concluded on his own initiative that the punishment imposed on Buchannan was less than faithful to the boundaries established in G. L. c. 127, § 40. The case would stand on a different footing if the suggestion of mootness were made after a prisoner in Buchannan's position had spent an aggregate thirty days in isolation on the ground that the prisoner, once released from isolation, had no further stake in the controversy. Then the facts would resemble those in *Diafario* v. *Commissioner of Correction,* 371 Mass. 545, 552-553 (1976), in which the prisoner was discharged from prison before his appeal was heard. The court observed that the question presented, involving the computation of good conduct credits under G. L. c. 127, § 129, was one of public importance — as is the issue in the case at bar — and was likely to recur in a time setting in which it was unlikely that the prisoner could "litigate the question to a conclusion before discharge." *Id.* at 552. See also *Davis* v. *Misiano*, 373 Mass. 261, 262 (1977) (birth of child did not render moot question of obligation by the defendant to the plaintiff for prenatal support). Compare *Sosna* v. *Iowa*, 419 U.S. 393, 397-403 (1975); *Weinstein* v. *Bradford*, 423 U.S. 147 (1975).

We are the more reluctant to step into the fray because the application of G. L. c. 127, § 40, as the Commissioner of Correction's Bulletin 77-16 observes, requires the exercise of practical discretion and judgment. The problem may lend itself better to administrative solutions than to an attempt to state a principle of general applicability by judicial decision. See *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. at 707 n.10.

*Judgment affirmed.*